case number 24-5034. Gengshu Scott He et al. The Appellants v. Marco Rubio, United States Secretary of State in his Office of Diplomacy and United States of America. Mr. Rodburt for the Appellants, Mr. Simon for the Appellates. Mr. Rodburt, good morning. Good morning, Judge Henderson. Good morning, panel. My name is Mitch Rodburt. I represent the Appellants, Jun Zhang, her minor children and her two parents, Wang Jing and Rong Zhang. May it please the Court. This appeal presents a rather simple question, which is whether the Zhang's second amended complaint plausibly alleges or allows the reasonable inference that a federal officer, namely Pert, acted in a manner that gave the Zhang's reasonable apprehension of harm and that they suffered such harm. The District Court below applied a test that doesn't exist under Virginia law. The test as articulated in Clark is that the present ability to cause harm is not a prerequisite or an element of the tort of common law assault under Virginia law. The District Court, however, dismissed the second amended complaint on the following conclusion, that the second amended complaint does not plausibly suggest that Pert was poised to injure anyone without significant delay. Let me ask you this. The opinion. The overt act. Well, there's more than one overt act and Virginia law counsels us that we should look at the totality of the complaint. That's out of Clark as well. You've got the officer grabbing Mr. He. Yes. And you've got him pointing the gun at the child. Correct. Are those the two overt acts? No. Okay. There's more. All right. These officers came to the Zhang home, their home, on the eve of a Chinese festival. They were dressed in black. They arrived at the house having bypassed a sign that said, don't come by here because we're protecting ourselves from COVID. And they banged loudly on the door for 30 seconds. That's the allegation. When they have masks on. I'm sorry. Did they have masks on? Yes, they wore masks. And were they COVID masks? Well, your honor, they were masks. And we didn't plead how, you know, whether they were meant to be, you know, more than what we would have understood to be a COVID mask at the time. And the full family goes to the front door. And at this point, Pert engages, is pronounced her, in a connection in a series of conversations, which has to do with some workplace allegation that Pert has been hounding her for years about. Now, the United States wants you to understand that because it's a work, it has a workplace genesis that therefore, it is not a common law court of assault. But I don't think that helps the United States here. I think the fact that these officers came here to bring to the Zhang home, an argument that belonged in the workplace is part of the series or totality of overt acts that happened that that evening. So do you think just appearing at their house? Was it over that obviously it was, I think so, your honor, given the circumstances about peering there at the house, and I to borrow from Fourth Amendment jurisprudence, we know that the home is a sacred space, it is not to be invaded without some degree of real necessity. And I think the inference that we have allowed, that's reasonable from the Second Amendment complaint, is that these federal officers intended to cause fear in the Zhangs. And the fear was felt, there's no question that this family was in fear. Those are the two elements of the tort, they are satisfied under the pleading standard that we have under Twombly and Iqbal. The problem, if there is one, and it's a very narrow one, but an important one, is that Iqbal and Twombly not be expanded to basically allow trial on the briefs. There's plenty of issues that the United States has raised in their response to our briefs that have nothing to do with the elements of the common law tort. And that even presumes that we have to plead the elements, we're not required to plead elements, we're required to plead facts that allow the inference that at trial those elements can be made. The United States wants you to understand, I think, that there was some degree of consent in the officer showing up on that evening, but consent is not an element. And if anything, consent is simply a defense that they may assert at trial on this. I have a couple of questions about, you know, to close the loop on assault, there have to be alleged facts that permit a reasonable inference that Hurt and Velez intended to cause harmful or offensive contact with the person, or at least to make them fear imminent such contact. And I wonder what the facts are that you're really focusing on in the complaint, that they were not just there to spook the family or drive home to Hurt that, you know, he wanted him to acknowledge something that Hurt thought Hurt had done, but that actually that there's some reasonable basis to fear imminent physical harm. So I think it is, this gets back to Judge Henderson's question, I think, Judge Pillar. It's a question of what facts do we focus on for purposes of that element of creating that apprehension of an imminent harm? Because it's not required that harm actually have to occur. No, it's that you have to be able to infer that the defendants intended to make the plaintiffs apprehensive that physical harm to them was imminent. Yes, right. I don't think physical harm being imminent is an element. I think it's fear that the apprehension is imminent is all. And that is set forth in the Clark case very plainly. It's not about the question of causing immediate harm or imminent harm. It's about causing imminent fear of harm. And that is exactly what is established by Hurt's conduct. And if we don't need to look much further than the two examples that Judge Henderson raises, which I think is a core part of the overt acts, which is Hurt reaching through the threshold, grabbing Hurt's arm, and then, you know, making his finger gun and pretending to shoot the child and calling him, you know, a racial slur. I think that that is, those are sufficient for us to conclude that there was the elements of the common law toward under Virginia law were established. So, as I read the Virginia cases, typically the overt acts, to find assault, the overt acts have to be aimed at the victim. And there's a question here whether the overt acts are just aimed at Hurt. You know, would they have done the exact same? The family weren't there or didn't come to the door. And so, the notion that these overt acts are in the intent to cause apprehension of physical harm are aimed at the family members. Do you have anything that supports an inference that that was the defendant's intent? I think that that inference arises from the fact that these federal agents arrived at the Zhang home on a known Chinese holiday. Do we have any reason to think that they knew that this was the New Year? I think what we know is that when they leave, as alleged, when we leave, when they leave the premises, they make, again, they make another racial slur. They start, they say something to the effect of that, you know, it's funny they're leaving the Christmas lights on, these immigrants are leaving this Christmas lights on. And we know that that... It seems to cut the other way. They don't know it's Chinese New Year. They're assuming that they're untimely. I think if we draw the inference in favor of the Zhangs, not in favor of the United States, the inferences, given the totality of the complaint where Hurt is accusing or demanding that Hurt concedes something that's still unknown. He's calling him an immigrant. He's saying you're not an American. He's doing all of these things. That essentially, I think, colors the entirety of the event on February 12, 2021. Is it important to you that the defendants know that this is the Chinese New Year? What if we think that that's not been alleged? If you think that's not been alleged, then I think that's just one factor. It's not the only factor that we realize. So for the aiming, if we think the aiming at the victim is important, the aiming at the family, you would rest on that going to the home. Yes, going to the home, grabbing the parent who's at the lead. All of them are shuddering behind him. I think that there is an understanding while that continues. It's not like, you know, Hurt sees that there's a family, says, okay, I'm backing off and I'll see you in the office on Monday. That's not what happens. Instead, he continues to harangue in front of his family. I think that's sufficient to allow us to go to the next stage of this case. We have to look at what inferences are reasonable. Now, if these were known mafiosi, then coming to the house and saying, basically, we know where you live and being you know, aggressive about this event, that might be a reasonable inference. But these are government employees. And this is intimidating Mr. Hall for months. A judge, it was more than months. It was over the course of years, nearly. I think I've heard probably a half a dozen jury issues just in the discussion. Rather than parsing all of this, isn't this the common sense way of looking at this, especially in the light most favorable to the plaintiffs, is that people came, banged on the door, grabbed, unconsented, the head or the father or the leading person, the leading defender of the home, because that's the person who kind of comes to confront whoever's on the other side of the door. And everyone is standing behind the prime defender of the castle and sees this man grab him by the wrist and calling him racial slurs. And notwithstanding all of that, points a finger as if a gun had a child. Wouldn't it be reasonable for at least that child to have some sort of fear that harm could come to them, and that a person was intending to place fear in the heart of that child? You don't point a finger looking like a gun at a child to, you know, endear yourself to them all five or whatever of those family members other than her. The only way the government wins is if none of them were, it's the assault isn't pled with respect to any of those people. So, when you look at the big picture here, isn't that really what this case comes down to? I agree, Judge Wilkins. And I think that the fact that the federal agents came as they did, dressed all in black, and stayed in front of the family, knowing the family was there, to continue the harangue that commenced at work against Mr. Hu, and acknowledge the presence of the family with this finger gun, puts all of them in apprehension that it's not just Mr. Hu that they're coming after. They came to the family We ask that the court reverse the district court and remand for proceedings consistent with our second amendment complaint. Thank you. All right, we'll give you a couple minutes and reply. Thank you very much, Judge. Mr. Simon. May it please the court. I think it's important to look at the allegations in the complaint. Mr. Rock. One question first. Is this guy, Perth, still employed there? He's not still employed. He left the State Department. If I could just give some quick background, and there are many points I would like to address with the court's indulgence. But first, according to the allegations in the complaint, Hu had not engaged with Perth, I think, for two years before this encounter. There had been a two-year gap because Hu had left the State Department and came back to the State Department. This administrative investigation was still ongoing and hadn't been closed yet. February 9th, according to paragraph 86, or 85 of the amended complaint, Hu receives a communication from Perth to try to set up an in-office interview. We need to remember this is COVID. The allegations in the complaint are that Hu was quarantining. He was teleworking. This incident occurred at 4 p.m. on a Friday during business hours. When you telework, your home becomes your duty station. But he was quarantining. I see there's no allegation of threat of bodily harm through contagion, but the reason that a person is teleworking and that people are quarantining is so that they will not be physically in the same space as their colleagues. Why isn't calling and waiting for an email reply, which apparently Mr. Hu had sent by the time Perth shows up, good enough? Well, with all due respect, Your Honor, this is really just background. I don't believe that's germane to the question of whether the elements of assault have been... Well, it's a little bit to the circumstances, at least as Mr. Ruppert talks about them, bringing a dispute that belongs in the workplace physically to the home. And you're right to point out this is during work hours. And there's a little bit of difference in characterization where the plaintiffs emphasize that they were getting ready for a family festival, a Chinese festival, the family's getting ready. And it sounds like it may have been on Mr. Hu's duty hours. But I guess I'm just asking why it isn't a reasonable inference from the allegations of this complaint that at least it's one of several facts that plaintiffs claim are relatively aggressive for the security officer to show up personally at the home. Merely showing up at home is not an assault under Virginia law. No, I know. You have to have it. Is it usual? Is it necessary? It feels aggressive. Even if the court were to infer it was aggressive, it is not an overt act directed to the family. What's Paragraph 107 of the complaint says? It says, Ruppert then reached and grabbed Hu's wrist while Hu was inside the threshold of his home. Yes, Your Honor. Isn't that a plausible allegation of an assault against Hu? This is not. Hu's, the claims that- Answer my question. Is that a plausible allegation of an assault against Hu? Well, Your Honor, it's followed by the statement that he was trying to hand him a business card. So you'd have to- Even- Grab my wrist and you're going to get a two-piece with a biscuit. Okay. Assuming it's an allegation of assault by Hu, that is not the assault. Hu may have a claim of assault, although that's been dismissed for other reasons. But that is not an assault on his family. Well, my point is, and I know that that's not the assault that's at issue in this count, because it's the other plaintiffs besides Hu. My point is, isn't that a plausible allegation of an assault against Hu that his family witnesses? And then you go further to the complaint, to paragraph 113 on the next page, that Hu's minor children begin to cry and Hu could feel his wife trembling behind him. And then he proceeds to point a pretend gun at Hu's son and press the thumb down as if he's shooting. That's paragraph 114. And Your Honor- So if they're all watching Hu get assaulted and they are trembling and crying, and the response to that is to point the pretend gun at a child, why isn't that an intent to cause fear? It's certainly not an intent to de-escalate the situation, at least reading everything in the light most favorable to the plaintiffs. Your Honor- Why isn't this a simple case of there's enough that's been pled here, whether they can prove it or not, or get any damages or not, is something else. But what are we doing here? The standard, there needs to be a plausible allegation that an overact was capable of causing imminent bodily harm to the victim claiming assault. So it has to be a reasonable- Or apprehension of such conduct. None of the overacts has to be capable of causing harm. It has to make the people reasonably feel like I'm going to be harmed. Right. But the reasonableness part means that the act has to be capable either actually or an appearance of causing harm. That's the Carter case. No, no, no. It has to be, I think, it has to cause a harmful or offensive conduct or cause imminent apprehension of such conduct. So itself doesn't have to be. And I mean, if they're grabbing the dad, why wouldn't the kids fear that they're going to grab them or the parents? Your Honor, if I could, the Carter case and the Kaufman v. Garnett case make clear. In Virginia, it has to be a reasonable apprehension, not just an apprehension. But it doesn't have to be that the defendant has already done conduct that could itself cause harm. And maybe he has here, but that's just to get the standards straight. Your Honor, I respectfully disagree. I think the standard is that for it to be an apprehension that is reasonable, the act committed has to have the capability, whether actual capability, a loaded gun, like real gun, or apparent capability to cause imminent bodily harm in the moment. Otherwise, the fear, any apprehension is not a reasonable apprehension. All of the Virginia cases, they talk about holding a cane. A gun, if the gun is not loaded, is still an assault because it has the appearance of being able to cause in the moment imminently bodily harm. In an overt act, I'm reading from Carter, a common law assault occurs, then they have the first, you know, action intended to inflict harm, or if the defendant engages in an overt act intended to place the victim in fear or apprehension of bodily harm and create such reasonable fear or apprehension in the victim. It's intended to make someone fear that they're going to be hurt and actually reasonably makes them so fear. It has to be a well-founded fear. Yeah, right, right, okay. And there has to be... What is unreasonable about the fear of these people? We're talking about the family. Whatever happened between the officer and her ended quickly with her saying, I want to hand you a business card. So at that point, if the children feared for their father's safety, that's not an assault on them. But wait a minute, if you're a child or an elderly parent, and the question is, has a defendant's conduct, was it intended to place me, the child, or me, the elderly parent, in fear or apprehension of bodily harm? And does it reasonably make me fearful seeing, as Judge Wilkins was saying, seeing the head of household be actually physically assaulted in his home? It seems to me it's reasonable to draw an inference that if the strong one among us is going to be victimized by these bullies, again, reading the complaint in the light most favorable to the plaintiffs and drawing reasonable inferences in their favor, if the complaint including physically unwanted touching of the dad, how is that not enough to show that they intended to place the children and the parents in reasonable fear for their own bodily safety? Because that act wasn't directed at the family. It didn't have the potential to physically cause contact to the family. It doesn't have to itself. It has to reasonably cause them fear that they will be hurt. Not just the act that's happened to hurt them. So Virginia law is very- Am I wrong about that? I respectfully disagree. Tell me what you think the standard is, because I thought that we had agreed a moment ago. Let's say words alone are not enough under Virginia law. I'm just going to start just, if I could just build this up. Words alone are not enough for what? To constitute an assault. Because you have to have the overt act. Correct. So even if words, even if you say, I'm going to kill you, that is not an assault under Virginia law. The reason it's not an assault is because a word doesn't have the actual ability to harm a person, and it doesn't have the apparent ability to harm a person. So you need the overt act has to do one of those two things. And that then, if there is an apprehension, that makes the apprehension reasonable. So here you have, let's assume that the grabbing of Hay's wrist meets the elements. That was not directed at the family. He was not in reach of the family. The family was behind Hay. He stopped and then handed Hay a business card. He took no steps into the house. He took no steps towards the children. Nothing that would create the imminence that's needed. The hand gesture, I apologize, but I'll just make this hand gesture to see this. This is not, cannot cause anyone actual harm, nor can it cause anyone apparent harm. Is it inappropriate if it happened? Absolutely. It's not an assault. Actual harm or apparent. It doesn't have to cause actual harm or apparent harm, right? I mean, actual, it has to have the, it has to either actually have the ability to cause imminent harm or have the appearance of the ability to cause imminent harm. Where are you getting that standard, which is a little different? I'm getting it from Carter. There must be some power. I'm sorry, this is page. This is hard to always with these, I'm going with the Virginia VA report or page 47. Are you in the Supreme Court case or the appellate, the court of appeals? I'm in the Supreme Court case. There must be some power actual or apparent of doing bodily harm. And that's, and then there's just a, just a, just a scenario in Carter where. But apparent power is sufficient is the next phrase. Right. And I'm not, what my point there is, is that's Carter. Carter was a situation where a police officer is doing a traffic stop. The person makes a movement from their hip. Arching towards the officer doesn't have a gun, but that movement in real time in the moment. Created reasonably imminent fear that the officer might be shot. Right. There's more language in Carter and that doesn't go to the word act. It goes to the imminence or the ability to injure someone on page. I don't know which page you were reading from. I think it was 841, 842. The court says the definition in Burgess remains valid. That definition does not require the present ability to inflict harm. When, as here, an assailant acts in a manner intended to put the victim in reasonable fear and causes the victim such reasonable fear. And if you say we don't know his intent. I'll give you that, but that's a jury question. I think we do know his intent, but it's that's a jury question. We can't say as a matter of law, but a jury has all of this scenario. This inexplicable campaign of intimidation against this man. Well, but let's talk about the second component, which is whether it's reasonable apprehension. That is not that can be decided by the court. That's an objective standard. And what you just read from Carter is addressing the fact that the driver didn't have a weapon. So he didn't actually have the present ability to harm the officer. But the act created the apparent ability to harm the officer. That's one fact situation in which, you know, it seemed to the to the. Officer that he had a gun. And so there's actually quite strong testimony there that the that the officer in the moment was fearing for his safety when the when the passenger went like this, but that's not required. And I think there's both before that passage from Lynch and after the part that Judge Henderson read and the prior, at least this comes out in my version, the prior column, we conclude a common law assault occurs. Where an assailant engages in an overt act intended to place the victim in fear or apprehension of bodily harm and create such reasonable fear or apprehension, they don't have to have any act that seemed to be capable of at that moment causing harm. That is the fact of with it, with the in Carter. But I think that's not saying that is always the way that we apply the standard. If that's the case, then words alone would be sufficient. Well, there has to be overt acts. What's your response? What's your response to the Mr. Roberts saying that the overt acts are many, you know, coming to the home, bringing a dispute to the home that that belonged in the workplace, banging hard on the door, being dressed in black and masked and, you know, being leaning into the to the threshold and grabbing. But those are all acts. What makes them not, in your view, overt acts under the assault provision in Virginia? Even if you take the characterization, Mr. Roper, acts preparatory to a future battery are not assault. And so let me give an example. I take we have a disagreement. We say, let's we stand up. Looks like there might be something to happen. I take my glasses off. That is an overt act. But this the act of me taking my glasses off and putting them on the table is not capable of causing anybody harm. It doesn't have the appearance of having fun. If I get into a position with my fists up now, suddenly I'm in an overt act where I actually have the capability of causing imminent physical harm. So the knocking on the door, none of that is causing the family the imminent fear, reasonable apprehension of imminent harm. Hayden have to open the door. He opened the door. He could have shut the door. There's no allegation he tried to shut the door. These were business associates. What about the grabbing of the arm in the wrist? So I assume that that assume for the sake of argument, that's an assault on, hey, it's not an assault on his family because that act could not have physically reached them. So it's not plausible or reasonable to conclude that that act was intended to place both in fear and people watching in fear. Well, I'm focusing your honor on the question of whether that created a reasonable apprehension of imminent harm in the family. Even if you accept that it was intended to instill fear in the family, that's not enough. It has to create a reasonable apprehension of imminent harm in the family and the family witnessing harm to their father. Virginia law does harm. What does harm mean? So are you saying that let's suppose the case that we were dealing with was Hu. Does he have to plead that somehow he was injured when his, under Virginia law, when his wrist was grabbed? No, I don't believe. I mean, I don't know about for battery, but for assault, he just has to plead that physical contact was imminent. Unconsented. Physical contact. Is the harm, right? Well, that's the bodily, that's the standard is essentially that you are at risk or you are reasonably apprehending imminent physical contact as a result from the act itself, the overact itself. Exactly. My point exactly. So the basic question is, if it can be done to Mr. Hu, why wouldn't the children or the pass? Mr. Hu and grab one of them? Well, that might, why wouldn't that be a reasonable fear for them to have? Because he didn't make any movement toward them. So that he has to take an overt act towards the children. If he, if he tried to enter the house, tried to move past the children, or at least one of them, but, but not, he didn't, there was no, that act that he, that you say he engaged a child with was not capable of causing that child getting this capable of causing harm. You keep coming back to that. And I, and we've had, I think three exchanges already where I've probed where you're getting that from, because the definitions that I read from Carter of this generally applicable standard, not the facts in Carter, which, you know, where the officer didn't think that actually a gun was being pulled on him. So yeah, he did think that he was about to be shot, but that's not the statement of the standard. That's a statement of the facts that met the standard. And the standard does not talk about overt acts that are themselves, but except for some misapprehension. It's the difference your honor between having subjective apprehension and reasonable apprehension. Not really. That doesn't track that. I think that reasonable apprehension is, you know, what a person in the situation who's not highly nervous or, and your honor, I'm sorry. I apologize. I hope I'm interrupting, but also the imminence is also factored into that. So if, if, um, if hair punch the father in the chin and, uh, and the children were right up behind him and the, and the parents right up behind them, would that be enough to create well, intend to create the harm and reasonably cause the harm that would certainly get much closer because you have, would it, would it, I mean, no or yes. And then you can explain, you just need to have a sense of where your position and how falls to the ground. And then he's now staring there after knocking out his father, facing the children that would create a reasonable apprehension of imminent harm to them. But here he grabbed momentarily because ha pulled back and said, you have to respect COVID distancing. And then he said, I want to hand you a business card. So did he say that? That's what, that's what it says in paragraph 96, I believe of the complaint. I'll take your word for it. I have it right. It's 95 or 96. So that's the context. And this is a business. This is a, how is there to do business with the father is maybe he's allegedly doing it aggressive manner, but is the father. So hurt is there to do business with ha. It's a business related conversation. How does it end? He leaves his business card and leaves. So this is, you know, this is not the type of act towards a third person that can put other people in reasonable fear that they're about to have imminent harm to themselves. He needs to do some other over at the only other over that he did was a pretend hand gesture. And that is not capable in the moment of creating reasonable fear. I also just know in paragraph, do we know whether hurt is packing? So your honor, there's no allegation that he has that he's armed. There's no allegation. He is a, he is a security officer. Well, he's known to her to be a law enforcement officer at state. If I, so I just want to make, make clear. My understanding is that typically they, these officers are armed, but what's important here is there's no allegation that, that they saw any weapon on him. Remember, this is February, 2021. I think it was 32 degrees out. Probably we're wearing. I'm just, I'm getting it. I had asked you before whether, no, I guess I had, I had been asking Mr. Robert, you know, there is a, if. Mr. Part were a known mobster. That it seems to me would make your case much harder or she wouldn't have to defend that case. And he was to Mr. Ha, he had intimidated him in the office. Uh, in, at least according to this complaint. Repeatedly. And I, I don't know that you know what he was talking about, about, but I thought you said he came to conduct business. I thought at some point he said ambush. Am I wrong about that? That's, that's an allegation that one of the statements he made was ambush. Yes, that's correct. But the children, the children and the family, there's no allegation. They knew about any prior conduct by her. I'm sorry, by her to her. What the family knew was that according to the complaint. Her repeatedly curse at her. And said COVID was caused by people like you. And other racial slur at the child. And I'm not going to repeat that paragraph 114. So, you think that minorities, immigrants, people of color. If they have racial slurs hurled at them and are being cursed at. But that doesn't plausibly create a fear of harm. Apprehension, a reasonable apprehension. So, I'm sorry, those allegations are certainly disturbing if they happened. I'm not saying otherwise, Your Honor. But there were no threat to do violence. And that's, that's what you need. My experience, racial epithet and cursing are common prelude to violence. But there's needs to then be an overt act. Is that, is that fair? Is that a fair, is that a fair inference based on how we know the world works? Well, certain, certain racial slurs, certainly, Your Honor. But the question.  Well, I don't know, I don't know specifically what the court is contemplating. Saying that, that, you know, you didn't have your, you took, immigrants don't put, put away their Christmas lights. I'm talking about what's in paragraphs, you know, 113, 114, 116. And fundamentally, Your Honor, there still needs to be, none of those were directed towards the children other than the last one. But to be clear, the last one, according to paragraph 114, was muttered. Meaning it was made under his breath. That's what muttered, that's the definition of muttered. And the child was several feet away behind the father and the mother. Okay, so we're supposed to take all of that in the light most favorable to the plaintiffs and say, because they alleged, used the word muttered in their complaint, we can infer that they didn't really hear it. Even if they, even if they heard it, it wasn't, it was muttered. So it was murmured. So that's not stated in a threatening way. I'd also just point out that in paragraph 114, they never allege that the family experienced, actually experienced fear from the pretend hand gesture or from that statement. They make that statement regarding, in paragraph 113, regarding the grabbing of his wrist. They never make it with respect to the, this other overreact we've been discussing. And if you look at their- Yes, that's related. When people cry and trembling, aren't they, isn't it reasonable to infer they're in fear? In fear, in fear of what happened to their father, but not necessarily- He's got to allege that it continued and didn't stop in order for us to, or otherwise we can just discount all the allegations that happen after that in the complaint. That's the way you're saying we're supposed to do this. What I'm saying is, Your Honor, is that if the children had fear from what happened to their father, their fear about what happened to his person is not an assault on them. For that to be assault on them, it has to be because them fear that their bodies will be imminently contacted. And what I'm saying is they have not made plausible allegations. They don't even allege they had actual fear of that in paragraph 114. And if you look at paragraph 198, that's their assault cause of action. Their basis for alleging reasonable fear is the grabbing of his wrist, not what's described in paragraph 114. If I have any further questions, we would respectfully request that the court affirm Judge Bullitt. Thank you. Thank you, Your Honor, for allowing me another two minutes. I won't use all of it. I direct the court's attention to paragraphs 121 and 122 of the second amendment complaint, which alleges that for several weeks, his four-year-old son wet his bed and was unable to sleep alone. Both of their sons were unable to sleep alone. And at 122, the second amendment complaint alleges that the elders, Ron and Wenjing, who were survivors of the Cultural Revolution in China, experienced insomnia and depression and were frightened that this would recur. I think that's sufficient allegation of fear. Can I ask you, your briefing relies on how Virginia has adhered to the second restatement of the courts and section 26 of which says, to make the actor liable for an assault, the other must be put in apprehension of a contact with his own person. And then the comment adds, it's not an actionable assault to make another fear that the actor will intentionally inflict a harmful or offensive bodily contact upon a third person, no matter how closely connected with the other by ties or blood or affection. So, and it goes on to talk about, you know, if you're afraid that your wife or child is going to be harmed, even though that's really anxiety-provoking, that that isn't enough. And I just am interested in your response to that. How do you deal with that? Thank you, Judge. I think that part of the restatement is articulating something very specific that doesn't apply here, which is where someone is told words or overt acts are directed at someone and someone, some third person is a part of that threat. I think that this is a lot different because Hurt is addressing the family together. Before you shifted to this case, you said, and the other third party is not part of that? The third party isn't present. It's not. It's not present. I meant to say present. I mean, everybody's there. They're being there, an audience to Hurt's performance. Not just an audience, but they're facing the same. They're facing him and they're behind. They're the strongest member of their family who's trying to protect them. And nevertheless, he's still assaulted and an unconsented touching. So, like, if you're the parent at the, you know, going to pick up your kid at school and you see them on the playground. That's the example. The bully is hitting your kid. The fact that you're witnessing that isn't. That's too distant. Yes, Your Honor. And that's what you think this is addressing. That's what I think, Your Honor. We asked the court to reverse and remand. Thank you very much. Thank you.
judges: Henderson; Pillard; Wilkins